682 So.2d 281 (1996)
Michael Paul BIENVENU, D. Mark Bienvenu and Yvonne Fenasci
v.
Peter DUDLEY and American Deposit Insurance Company.
No. 95 CA 0547.
Court of Appeal of Louisiana, First Circuit.
October 3, 1996.
Writ Denied December 13, 1996.
*282 Robert Ellender, Lafayette, and Harry Phillips, David Bienvenu, Baton Rouge, for Michael Paul Bienvenu.
Terry Rowe, Lafayette, for State Farm Mutual Automobile Insurance Co.
David Hardy, Baton Rouge, for Peter Dudley.
Before: LOTTINGER, C.J., and WHIPPLE, FOGG, FITZSIMMONS and KUHN, JJ.
FITZSIMMONS, Judge.
The litigation giving rise to this appeal results from an automobile accident. Defendant's fault in causing the accident was stipulated to prior to trial. In a bifurcated trial, the jury was first asked to determine the nature and extent of compensatory damages and whether defendant was intoxicated at the time of the accident. Thereafter, the jury was asked to consider the appropriateness of exemplary damages. Based upon the jury verdict, plaintiff applied for a new trial, or in the alternative, for a judgment notwithstanding the verdict. Following the trial court's grant of an additur, plaintiff appealed to this court, and defendants have answered.

*283 FACTS
In the early morning hours of September 3, 1989, plaintiff, Michael Paul Bienvenu ("Bienvenu"), was operating a 1986 Volkswagen Jetta owned by his father, plaintiff, D. Mark Bienvenu. Bienvenu, an LSU student at the time, was accompanied by his girlfriend, plaintiff, Yvonne Fenasci ("Fenasci"). As the pair proceeded northbound on Staring Lane in Baton Rouge, the vehicle in which they were riding was struck head on by a southbound 1980 Datsun automobile operated by defendant, Peter Dudley ("Dudley")[1]. As a result of this accident, both Bienvenu and Fenasci sustained injuries, and the Volkswagen was deemed a total loss. Plaintiffs subsequently filed the instant action against Dudley and his liability insurer, American Deposit Insurance Company, seeking compensatory as well as exemplary damages as a result of Dudley's alleged intoxication at the time of the accident.
Plaintiffs later amended their petition to name the uninsured or underinsured motorist carrier of the Bienvenu vehicle, State Farm Mutual Automobile Insurance Company, as an additional defendant. American Deposit, Dudley's liability insurer, thereafter tendered its policy limits and was released. Fenasci's claim, as well as the property damage claim, were ultimately settled, and the remaining plaintiff, Bienvenu, proceeded to trial against Dudley and State Farm. As liability was undisputed, the issues at trial involved the nature and extent of compensatory damages, whether Dudley was intoxicated at the time of the accident, and if so, the appropriateness of exemplary damages. At the conclusion of the bifurcated trial, the jury awarded Bienvenu the following damages:

Physical pain and suffering,
past present and future ..... $10,000.00
Mental pain and suffering, past,
present and future .......... 0
Past Medical Expenses ....... $ 8,200.00
Future Medical Expenses ..... $11,800.00
Permanent Disability ........ 0
Exemplary Damages ........... $10,000.00
 ___________
TOTAL AWARD ................ $40,000.00

Bienvenu thereafter filed a motion for a new trial and in the alternative, for a judgment notwithstanding the verdict. Following a hearing, the trial court granted an additur of $10,000.00 in light of the jury's refusal to award any damages to Bienvenu for past, present and future mental pain and suffering. State Farm accepted the additur, but reserved its rights to answer any appeal. Bienvenu subsequently filed the instant appeal which was answered by State Farm.[2]

ASSIGNMENTS OF ERROR
On appeal, Bienvenu asserts that the trial court erred in:
(1) excluding evidence of Dudley's prior DWI arrests and conviction together with evidence of his present or future wealth for purposes of determining whether an award of exemplary damages is appropriate;
(2) permitting testimony as to Dudley's character during the exemplary damage phase of the trial;
(3) failing to grant Bienvenu's motion for JNOV; and
(4) awarding unreasonably low general damages to Bienvenu.
In its answer to Bienvenu's appeal, State Farm argues that the trial court's grant of an additional amount for past, present and future mental pain and suffering was improper.

EXEMPLARY DAMAGES
In his first assignment of error, Bienvenu contends that the trial court erred in refusing to admit evidence of Dudley's prior DWI arrests and conviction as well as evidence of Dudley's present or future wealth during the exemplary damage phase of the trial. After our review of the record in this matter, we note that Bienvenu was permitted *284 to introduce evidence of Dudley's previous DWI conviction in February of 1986; however, the court disallowed the introduction by Bienvenu of a "rap sheet" for Dudley which indicated two prior DWI arrests. Because there was no evidence that Dudley had pleaded guilty or been convicted in connection with the earlier arrests, the court declined to admit this evidence.
Bienvenu, relying on a recent decision of this court in Angeron v. Martin, 93-2381 (La.App. 1 Cir. 12/22/94); 649 So.2d 40, asserts that all of Dudley's prior DWI arrests or convictions were admissible to show his reckless disregard for the safety of others on the night of the accident. Bienvenu contends that such evidence was not offered for the purpose of attacking Dudley's credibility which is disallowed under La.Code Evid. art. 609 F[3], but instead for purposes other than proof of character as provided for under La.Code Evid. art. 404 B(1)[4]. In response, Dudley and State Farm argue that the "rap sheet" sought to be introduced by Bienvenu was nothing more than a list of unproven allegations of slight probative value when compared to its prejudicial effect.
Bienvenu's objective in seeking to introduce evidence of Dudley's prior DWI arrests was to prove that Dudley habitually acted in reckless disregard for the safety of others and therefore should be held liable for exemplary damages. However, under our law evidence of an arrest has generally been held to be inadmissible because it constitutes nothing more than an accusation based upon the opinion of the arresting officer. State v. Bradley, 360 So.2d 858, 861 (La.1978). This is distinguishable from the facts of Angeron, wherein the court allowed the victim of an earlier accident involving defendant to testify as to her injuries, and the trial court took judicial notice of defendant's "no contest" plea to the charge of DWI. Absent proof that Dudley was intoxicated on those prior occasions, the trial judge's decision to exclude the "rap sheet" of defendant's prior arrests was correct.
Bienvenu further argues that the trial court erred in excluding evidence as to Dudley's present or possible future wealth, and asserts that said ruling is inconsistent with the jurisprudence of this court. As authority for this position, Bienvenu cites Angeron, 649 So.2d at 44, and Jordan v. Intercontinental Bulktank Corp., 621 So.2d 1141, 1157 (La. App. 1st Cir.), writs denied, 623 So.2d 1335, 1336 (La.1993), cert. denied, 510 U.S. 1094, 114 S.Ct. 926, 127 L.Ed.2d 219 (1994). The trial judge ruled that exemplary damages should serve to penalize egregious conduct and should not be linked to a defendant's ability to respond in damages.
While we would agree, in light of Rodriguez v. Traylor, 468 So.2d 1186, 1188 (La. 1985), that the wealth or poverty of a party to a lawsuit is not a proper consideration in the determination of compensatory damages, Bienvenu is correct in his assertion that the above-cited decisions of this court hold that the wealth or financial situation of a defendant is a relevant factor in determining the amount of an exemplary or punitive damage award. See Angeron, 649 So.2d at 44, and Jordan, 621 So.2d at 1157. The basis for this distinction lies in the purpose underlying these two types of awards. Since the objective of compensatory damages is to repair the damage caused by the tortfeasor, the tortfeasor's ability to pay is irrelevant. On the other hand, exemplary damages seek to punish the tortfeasor as well as deter others from similar anti-social conduct. When liability for exemplary damages is at issue, the wealth or financial situation of the defendant-tortfeasor is a relevant factor in determining the amount of any award. Other relevant factors include, the nature and extent of the harm to the plaintiff; the character of the conduct involved; and the extent to which *285 such conduct offends a sense of justice and propriety. Angeron, 649 So.2d at 44; Jordan, 621 So.2d at 1157. In light of the foregoing, the trial judge erred in failing to admit evidence of Dudley's financial condition.
Having reached this determination, we are now confronted by the res nova issue of whether consideration of this factor should be restricted to the tortfeasor's wealth at the time of the offense. Bienvenu asserts that the jury should have been allowed to consider evidence of Dudley's financial condition, including his professional status, his present salary, his prospective remuneration, and future financial opportunities. Conversely, State Farm argues that if Dudley's financial condition is to be considered at all, said consideration should be restricted to the time of the accident. State Farm argues that to hold otherwise, would encourage defendant-tortfeasors to impoverish themselves prior to trial and further, permit rank speculation by jurors as to the earning capacity of a defendant.
After careful consideration of the concerns expressed by the parties, it is the opinion of this court that when liability for exemplary damages is an issue at trial, evidence as to the defendant-tortfeasor's current financial condition is relevant and may be considered by the trier of fact in determining the appropriateness of exemplary damages. The goal of effective punishment for the tortfeasor can only be achieved through accurate and reliable evidence as to the tortfeasor's financial position at the time punishment is imposed. Absent evidence to indicate that the tortfeasor has attempted to divest himself of assets or otherwise conceal his true financial condition, the tortfeasor's wealth at the time of the offense is irrelevant. Similarly, any consideration of the tortfeasor's future worth or earning capacity, unless reasonably certain, would be predicated on mere guesswork, speculation and conjecture.
Through a joint proffer of evidence, counsel submitted Dudley's W-2 wage and tax statements for the years 1989 through 1992. A review of the record reveals that at the time of this accident in September of 1989, Dudley was a third year law student employed as a law clerk by Greco and Greco, a Baton Rouge law firm where he had been working for a little over one year. Dudley's W-2 form for 1989 reveals a gross income of $8,258.00. Dudley testified that following the accident, he dropped out of school for a semester thereby postponing his graduation until December of 1990. At the time of the trial in this matter in December of 1993, Dudley was employed as an attorney by Greco and Greco. Dudley's W-2 form for 1992 reveals a gross income of $32,400.00. While the record fails to disclose other items of property owned by Dudley, it is our belief that the value of any such property would not be significant[5].
As noted in brief by counsel for Dudley, the jury's award of $10,000.00 in exemplary damages exceeded Dudley's earnings at the time of the accident and represented one-third of his annual gross income at the time of trial. Through the testimony elicited at trial, the jury was aware that Dudley was a practicing attorney. The point raised by Dudley's counsel is well takenthe general public's impression of the salary earned by the average attorney is probably greater than the amount actually earned by Dudley. Nevertheless, the jury only chose to impose exemplary damages in the amount of $10,000.00. Given these facts, there is no evidence to suggest that if the proffered evidence had been considered by the jury, the award of punitive damages would have been greater. Thus, the trial court's decision to exclude this evidence was harmless error.

ADMISSION OF TESTIMONY OF DEFENDANT'S EMPLOYER
In his second assignment of error, Bienvenu asserts that the trial court erred in permitting Dudley's employer, attorney Cyrus *286 Greco, to testify as to Dudley's character. Citing La.Code Evid. art. 404(A), Bienvenu asserts that such evidence was inadmissible in a civil case particularly since Dudley's character was not at issue. Dudley and State Farm argue that Mr. Greco's testimony during the exemplary damage phase of the trial, was not offered as proof of Dudley's character, but rather as evidence of Dudley's rehabilitation following the accident. Defendants sought to thereby mitigate a possible exemplary damage award through a showing that future deterrence was not required.
Based upon our review of the record in this matter, we decline consideration of this issue in light of Bienvenu's failure to contemporaneously object to the admission of this testimony. La.Code Civ. P. art. 1635; La. Code Evid. art. 103. This assignment of error is without merit.

JNOV/ADDITUR/COMPENSATORY DAMAGES
The third and fourth assignments of error raised by Bienvenu are that the jury's award of $10,000.00 in general damages was abusively low, and that the trial court erred in failing to grant his motion for judgment notwithstanding the verdict (JNOV).
A JNOV is a procedurally correct device for correcting an unreasonable damage award. Cheramie v. Horst, 93-1168, p. 3 (La.App. 1st Cir. 5/20/94); 637 So.2d 720, 722. A trial court may also grant an additur or remittitur if the court is of the opinion that the verdict is so excessive or inadequate that a new trial should be granted for that reason only. Id. Additur or remittitur is entered only with the consent of the plaintiff or defendant and as an alternative to a new trial. La.Code Civ. P. art. 1814. A new trial is mandatory when the verdict or judgment is clearly contrary to the law and evidence and discretionary "in any case if there is good ground therefor." La.Code Civ. P. arts. 1972, 1973.
In the instant case, Bienvenu filed a motion for a new trial, and in the alternative, for a JNOV. Following a hearing, the trial court granted Bienvenu a $10,000.00 additur due to the jury's failure to award him any sum for past, present and future mental pain and suffering. State Farm accepted the additur under protest; however, Bienvenu appealed. In its answer to the appeal, State Farm asserts that the trial court erred in granting the additur as Bienvenu's claim for past, present and future mental pain and suffering is unsupported by the record. However, during oral argument, counsel for State Farm abandoned this position. Thus, the additur is not an issue on appeal.
At trial, the evidence showed that as a result of this accident, Bienvenu sustained numerous cuts and bruises as well as a fracture of the left distal radius in his wrist. He underwent a closed reduction procedure under local anesthesia at the emergency room of Our Lady of the Lake Hospital, at which time a short arm cast was applied. Bienvenu's treatment required no stitches and he was released from the emergency room several hours later. At the time of this accident in September of 1989, Bienvenu was completing his final semester of undergraduate work at LSU and held a part-time job on campus. As a result of this accident, he missed one or two days of class and a couple of weeks of work.
In early December of 1989, Bienvenu returned for a follow-up visit to Dr. Alan Farries, the orthopedic surgeon who had been treating him for the fracture to his wrist. At that time, Bienvenu related that he had been experiencing pain in his right hip during the previous month. This pain had become increasingly constant and severe, particularly when sitting or lying on hard surfaces. Upon physical examination, Dr. Farries noted a degree of tenderness over the right sacroiliac joint; however, a neurological examination proved to be entirely within normal limits. Dr. Farries prescribed treatment with anti-inflammatory medication and continued to follow Bienvenu over the next several months.
A bone scan performed in May of 1990 revealed increased activity in the sacroiliac joint, particularly on the right side. This test was followed by an MRI study wherein the radiologist performing the test noted the presence of some kind of trauma to the sacroiliac joint. Bienvenu was placed on a *287 different type of anti-inflammatory medication and did not return to Dr. Farries for nearly six months. Upon his return in November of 1990, Dr. Farries noted that Bienvenu's examination was unchanged; however, x-ray examinations performed on that date revealed evidence of sclerosis in the right sacroiliac joint.
Bienvenu did not return to Dr. Farries until November of 1991, at which time he related that the pain in his right hip had resolved. However, he was now experiencing pain on his left side. X-ray exams performed on that date revealed the previously noted sclerosis, but no evidence of any changes on the left side. Bienvenu was maintained on anti-inflammatory medication and returned with similar complaints in February of 1992. A repeat bone scan was performed in the spring of 1992, which showed increased activity in the left sacroiliac joint as compared with the right. Following a series of changes in anti-inflammatory drugs, Dr. Farries ordered a second MRI. Performed in late July, 1992, this repeat MRI revealed mild degenerative changes in both sacroiliac joints. On his final visit to Dr. Farries on July 31, 1992, Bienvenu was referred to the care of a second orthopedic surgeon, Dr. Robert Nicholson.
Dr. Nicholson initially saw Bienvenu in January of 1993 and on four more occasions in March and June of 1993. A third bone scan was performed at Dr. Nicholson's request in June of 1993 and revealed some improvement from earlier studies. Dr. Nicholson saw Bienvenu again in September of 1993, prior to a third MRI examination.
Dr. Charles Aprill, a New Orleans radiologist, performed the MRI on September 20, 1993, at the request of Dr. Nicholson. Dr. Aprill opined that based upon his experience, the underlying bony changes in Bienvenu's sacroiliac joints were not caused solely by the trauma resulting from the September 1989 accident. It was Dr. April's opinion that Bienvenu had pre-existing sacroiliitis, and as a result of the accident, sustained a strain/ sprain type injury to the sacroiliac joints which was superimposed upon the pre-existing condition. The trauma of the accident caused the diseased joint to become painful.
Bienvenu returned to Dr. Nicholson a final time in October of 1993. In Dr. Nicholson's opinion, Bienvenu would continue to be symptomatic and require further treatment on an as needed basis. Bienvenu was given no restrictions other than to refrain from overly strenuous manual-type activities.
The testimony reveals that upon graduation from LSU, Bienvenu went on to enroll and graduate from law school in the standard three years. Despite his reported complaints of pain, Bienvenu stated that he has not refrained from any activities. He must, however, restrict the amount of time spent engaged in certain activities. Gary Tromblay, Bienvenu's roommate during his final year of law school, testified that Bienvenu frequently complained of back pain, particularly after engaging in intramural sports such as softball and basketball.
Bienvenu contends that the jury erred in awarding only $10,000.00 in past, present and future physical pain and suffering. We agree that this award constitutes an abuse of discretion under the circumstances of this case. Based upon the evidence presented, as outlined above, we find that $75,000.00 is the lowest award which would reasonably compensate Bienvenu for his physical pain and suffering.

CONCLUSION.
Therefore, for the above and foregoing reasons, the judgment of the trial court is amended to increase plaintiff's award for past, present and future physical pain and suffering from $10,000.00 to $75,000.00. In all other respects, the judgment is affirmed. Costs of this appeal are assessed against defendant, State Farm Mutual Automobile Insurance Company.
AMENDED AND, AS AMENDED, AFFIRMED.
LOTTINGER, C.J., concurs to the extent the trial court judgment is affirmed but dissents from the increase in quantum.
*288 WHIPPLE, J., concurs in part, and dissents in part, finding that the amount awarded by the majority for an increase in quantum to plaintiff is excessive.
NOTES
[1] At the time of the accident, Dudley was operating his vehicle without a valid driver's license due to a previous DWI conviction in February of 1986 which resulted in the suspension of his driving privileges.
[2] Dudley also answered the appeal filed by Bienvenu contending that the trial court improperly instructed the jury as to the law regarding intoxication, and further, that the jury's award of exemplary damages was based on insufficient evidence. In brief, counsel for Dudley noted that these claims had been abandoned.
[3] La.Code Evid. art. 609 F provides that "[e]vidence of the arrest, indictment, or prosecution of a witness is not admissible for the purpose of attacking his credibility."
[4] La.Code Evid. art. 404 B(1) provides in pertinent part that:

Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible ... when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. (Emphasis supplied.)
[5] The record reveals that at the time of this accident in 1989, Dudley was the owner of a 1980 Datsun automobile which was heavily damaged as a result of the accident. He carried minimal automobile liability insurance, and lacked medical insurance. He testified that upon speaking with an emergency room physician following the accident, he opted not to pay for treatment.