952 So.2d 720 (2007)
J. Robert WOOLEY, as Acting Commissioner of Insurance for the State of Louisiana
v.
AMCARE HEALTH PLANS OF LOUISIANA, INC.
Nos. 2006 CA 1146, 2006 CA 1147, 2006 CA 1148, 2006 CA 1149, 2006 CA 1150, 2006 CA 1151, 2006 CA 1152, 2006 CA 1153, 2006 CA 1154.
Court of Appeal of Louisiana, First Circuit.
January 17, 2007.
Joseph E. Cullens, Jr., Baton Rouge, Guy M. Hohmann, Austin, TX, Kimberly *722 S. Morgan, Edward J. Walters, Jr., Baton Rouge, Sue Buser, Gonzales, Jonathan C. Augustine, Baton Rouge, Counsel for PlaintiffAppellee J. Robert Wooley, as Acting Commissioner of Insurance and Liquidator of AmCare Health Plans of Louisiana, Inc.
James C. Percy, David M. Kerth, Baton Rouge, Robert B. Bieck, Jr., New Orleans, Counsel for DefendantAppellant Health Net, Inc.
Joseph J. McKernan, Baton Rouge, Counsel for PlaintiffAppellee Jean Johnson as Texas Special Deputy Receiver.
David M. Latham, Keary L. Everitt, New Orleans, Counsel for PlaintiffAppellee Louisiana Department of Insurance.
Gary P. Koederitz, Baton Rouge, Counsel for DefendantAppellee BestCare, Inc.
Wendell Clark, Baton Rouge, Counsel for DefendantAppellee Thomas S. Lucksinger, Michael D. Nadler and Stephen J. Nazarenus.
Claude F. Reynaud, Jr., Baton Rouge, Counsel for DefendantAppellee Proskauer Rose, L.L.P. and Stuart L. Rosow.
Harry J. Philips, Jr., Baton Rouge, Counsel for DefendantAppellee William Galtney, Jr. and Michael K. Jhin.
Mary Olive Pierson, V. Thomas Clark, Jr., Baton Rouge, Counsel for DefendantAppellee PriceWaterhouseCoopers, L.L.C.
Robert J. Burns, Jr., Baton Rouge, David H. Topol, Washington, D.C., Counsel for DefendantAppellee Greenwich Insurance Company.
George B. Hall, Jr., New Orleans, Merril Hirsh, Washington, D.C., Kelsey Kornick Funes, Baton Rouge, Counsel for DefendantAppellee Executive Risk Management and Executive Risk Specialty Ins. Co.
David L. Guerry, Baton Rouge, Counsel for DefendantAppellee Scott Westbrook.
William C. Kaufman, III, Baton Rouge, Counsel for DefendantAppellee M. Lee Pearce.
Dominique J. Sam, Michael Charles Guy, Baton Rouge, Counsel for Amicus Curiae Charles C. Foti, Jr., Atty. Gen., On Behalf of the Commissioner of Insurance-Liquidator of AmCare Health Plans of Louisiana, Inc.
Before: CIACCIO, LANIER, and CLAIBORNE, JJ.[1]
PER CURIAM.
These show cause rules were issued to determine whether subsequently rendered trial court judgments improperly substantively affected original judgments. For the following reasons, we grant the rules to show cause and dismiss these appeals, vacate the subsequent judgments and reinstate the trial court's original judgments.

PROCEDURAL FACTS
These three consolidated actions (main demands) were filed by J. Robert Wooley, Commissioner of Insurance for the State of Louisiana, in his capacity as Liquidator for AmCare Health Plans of Louisiana, Inc., a Louisiana health maintenance organization (hereinafter referred to as the Louisiana HMO). Health Net, Inc. (hereinafter referred to as Health Net) was joined as one of many defendants. Kim Holland, Insurance Commissioner for the State of Oklahoma, in her capacity as Receiver for AmCare Health Plans of Oklahoma, Inc. (hereinafter referred to as the *723 Oklahoma HMO) and Jean Johnson, Special Deputy Receiver of AmCare Health Plans of Texas, Inc. (hereinafter referred to as the Texas HMO) intervened in the actions as plaintiffs. All of the plaintiffs asserted causes of action in tort and contract and, among other things, sought punitive (exemplary) damages and attorneys' fees under Texas law. It appears the claims against all defendants except Health Net were settled.
These consolidated cases were tried on June 17, June 20-24, and June 27-30, 2005, with additional evidence submitted to the court in July 2005. The Texas action was a jury trial and the Louisiana and Oklahoma actions were bench trials. Prior to the commencement of the trial, the trial court issued the following order:

IT IS HEREBY ORDERED that the Motion to Bifurcate the Trial of Attorneys' Fees Either Through Stipulation of the Parties or Through Separate, Post-Verdict Presentation of [sic] the Jury and Request for Expedited Hearing filed herein by AmCare-OK, AmCare-LA, and AmCare-TX is GRANTED. . . . (Emphasis added.)
The record reflects that the jury verdict in the Texas case was returned on June 30, 2005. The jury found Health Net 85% at fault, "Any other Company" 15% at fault and awarded the Texas HMO $52,400,000.00 for compensatory damages.
The jury answered "Yes" to Interrogatory 7 that asked "Do you find by the preponderance of the evidence that defendant Health Net, Inc. knowingly engaged in any unfair or deceptive act or practice that was the proximate cause of damage to the Texas HMO, or its creditors?" (Emphasis added.) This language tracks the operative language of V.A.T.S. Insurance Code art. 21.21, § 16 and establishes the factual basis for the liability of Health Net for "reasonable and necessary attorneys' fees." Neither the jury verdict nor the judgment memorializing the jury verdict fix an attorney fee.
The jury answered "Yes" to Interrogatory 9 that asked "Do you find by clear and convincing evidence that defendant Health Net, Inc. acted with malice or gross negligence regarding the rights of the Texas HMO or its creditors?" (Emphasis added.) This language tracks the operative language of V.A.T.S. Civil Practice and Remedies Code art. 41.003(a) and (b) and establishes the factual basis for the liability of Health Net for punitive damages. At a bifurcated trial whose purpose was to fix the quantum of the punitive damages, the jury assessed a sum of $65,000,000.00.[2] In a subsequent Judgment Notwithstanding the Verdict (JNOV) the trial court reduced this award by 30%.
On November 4, 2005, the trial court rendered and signed essentially similar judgments on the merits in favor of the Louisiana HMO and the Oklahoma HMO (hereinafter sometimes referred to as the *724 HMOs). The pertinent portions of these judgments provide as follows:
IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that plaintiff sustained its burden of proving by clear and convincing evidence that defendant Health Net, Inc. committed fraud that proximately caused damages to the Oklahoma HMO or its creditors;
* * *
IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that plaintiff sustained its burden of proving by a preponderance of the evidence that defendant Health Net, Inc. knowingly engaged in an unfair or deceptive act or practice that was the proximate cause of damage to the Oklahoma HMO or its creditors;
* * *
IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that plaintiff sustained its burden or proving by clear and convincing evidence that defendant Health Net, Inc. acted with malice or gross negligence regarding the rights of the Oklahoma HMO or its creditors; and
* * *
IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that, given this Court's finding that defendant Health Net, Inc. knowingly engaged in an unfair or deceptive act or practice that was the proximate cause of damage to the Oklahoma HMO or its creditors, plaintiff is entitled to an award of reasonable attorneys' fees; the evidence supporting the award of attorneys' fees and the determination of the amount of the attorneys' fees award shall be made following a bifurcated trial to be held on the 21st day of November, 2005, at 9:30 a.m.;
IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that plaintiff sustained its burden of proving by clear and convincing evidence that defendant Health Net, Inc. engaged in fraud, malice, and gross negligence, and this Court finds that defendant Health Net, Inc.'s conduct was sufficiently egregious to warrant an award of punitive damages; the evidence supporting the exact amount of the punitive damages award shall be made following a bifurcated trial to be held on the 21st day of November, 2005, at 9:30 a.m.;
IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that, given this Court's finding that defendant Health Net, Inc. knowingly engaged in an unfair or deceptive act or practice that was the proximate cause of damage to the Oklahoma HNO or its creditors, plaintiff is entitled to an award of either treble compensatory damages or, at its election, an award of punitive damages as determined following the bifurcated trial regarding the same [.] (Emphasis added.)
These judgments conclude with the proclamation that "there being no just reason for delay, this judgment shall constitute a final appealable judgment and is hereby accorded such designation. . . ."
A review of these judgments shows that the trial court made specific factual rulings that tracked the operative language of the Texas statutes that provided liability for punitive damages and attorneys' fees.
On November 21, 2005, the trial court convened "the bifurcated trial." The first issue considered was the issue of attorneys' fees. During the presentation of evidence, counsel for Health Net attempted *725 to question a witness concerning "the basis, statutory or otherwise, for the award of these [attorneys' fees and punitive damages] items of these [sic] damages." The HMOs' counsel objected and the court sustained the objection.
Health Net's counsel then noted his intent to proffer this testimony, to which the trial court responded, "No. You're not going to be able to do that today. . . . I thought this was going to [be] a simple bifurcated hearing, trial on two narrow issues but its obviously going to be more than that. And this is a very short week and you will have thirty days in accordance with the Code after this trial in which to engage a court reporter and do your proffer."
Later during the questioning of another witness by Health Net's counsel, the court interjected with the following: "[T]hat's exactly what I did not want to get into, a legal debate about all these extraneous issues. These are very interesting and might be subject for a law review article, but this is merely an issue for the court to determine on the reasonableness of attorney fees, that we do this in about an hour every Monday, you know, and I don't want to get too far into this." (Emphasis added.) Counsel then continued, questioning the witness as to the hourly rates of attorneys involved in this and other litigation.
During this trial the HMOs presented evidence of the following: (1) the curriculum vitae of the attorneys; (2) a listing of all pleadings; (3) quarterly and annual financial statements that Health Net filed with the United States Securities and Exchange Commission; (4) law firm time sheets; (5) law firm attorney rate schedules; (6) law firm billing invoices, and (7) expert testimony concerning the reasonableness of attorneys' fees. This evidence generally tracks the language of Rule 1.5(a) of the Louisiana Rules of Professional Conduct which provides as follows:
(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.
No evidence relevant to liability was presented.
At the end of the day on November 21, 2005, the trial court recessed the proceedings between the examination and cross-examination of a witness for the HMOs.
When the proceedings resumed on November 22, 2005, Health Net's counsel informed the court it did not intend to cross examine the witness, and the HMOs' counsel stated the "live testimony portion of the evidence" was concluded. Additional conversation between the court and counsels was had, and then the HMOs' counsel asked of the court, "[T]o help us with scheduling and to get this matter before *726 you as quickly as possible, I would ask that you set some deadlines." The HMOs' counsel suggested "fifteen days to designate any witnesses or evidence and then an additional fifteen days, which would be thirty days, to complete all depositions and perhaps even by agreement we do this all, this is a judge matter, bifurcated trial, we can do it by depositions, we can do it by writing, and we simply submit it to the court along with post-trial memorandum within thirty days of today's date." Health Net's counsel agreed in principle, contingent upon approval by Health Net. The court then scheduled a telephone conference for the following Monday, allowing each party an opportunity to confer with its client. At that point, the November 22, 2005 transcript ends.
The minute entries for the pertinent dates establish that on November 21, 2005, "evidence commenced on the Bifurcated Trial of this matter regarding Attorney Fees and Punitive Damages. Without completing introduction of evidence, this matter was laid over until Tuesday, November 22, 2005, at 9:30 a.m. for the introduction of additional evidence." On November 22, 2005, the minute entry states, "The Trial of the bifurcated case as to Attorney Fees and Punitive Damages was resumed. . . . Whereupon, by Stipulation of counsel and with the consent of the Court, telephone conference was fixed for Monday, November 28, 2005, at 9:15 a.m., at which time deadlines will be fixed for submission by either reassignment for hearing in Open Court or by way of Deposition."
On December 6, 2005, the trial court signed a second judgment pertaining to the Louisiana HMO's claim for attorneys' fees which provided as follows:
IT IS HEREBY ORDERED ADJUDGED AND DECREED that the Plaintiff, J. Robert Wooley Commissioner of Insurance for the State of Louisiana, as Liquidator for Amcare Health Plans of Louisiana has failed to meet his burden to establish the awarding of attorneys fees pursuant to Texas Code Article 21.21 in conjunction with Louisiana Rules of Professional Conduct, Rule 1.5. (Emphasis added.)
On December 12, 2005, the trial court signed a second judgment that provided the same for the Oklahoma HMO's claim for attorneys' fees.
On December 20, 2005, the trial court signed a second judgment pertaining to the Louisiana and Oklahoma HMOs' claims for punitive damages which provided as follows:
WHEN, after hearing the evidence and argument of counsel the Court being of the opinion that upon the facts and law, plaintiffs have shown no right to relief, grants judgment in accordance with CCP Art. 1672(B).

THEREFORE, IT IS HEREBY ORDERED ADJUDGED AND DECREED that there be judgment in favor of defendant and against plaintiffs involuntarily dismissing the claim for punitive damages, with prejudice. (Emphasis added.)
(These three judgments may sometimes be referred to collectively as the December judgments.)
The Louisiana and Oklahoma HMOs took these appeals.

CAUSE OF ACTIONS FOR PUNITIVE DAMAGES AND ATTORNEYS' FEES
The Louisiana and Oklahoma HMOs are asserting claims for punitive damages and attorneys' fees as authorized by Texas law. Each of these claims is a separate cause of action that arises out of the facts pertinent to the causes of action asserted in the main and incidental demands. *727 Cf. Cantrelle Fence & Supply Co. v. Allstate Ins. Co., 515 So.2d 1074, 1078-79 (La.1987); Robin v. All State Ins. Co., XXXX-XXXX, pp. 46-47 (La.App. 3 Cir. 2/5/03), 844 So.2d 41, 46-47, writ denied, XXXX-XXXX (La.10/17/03), 855 So.2d 763; Walker v. Stewards of Jefferson Downs Race Track, 615 So.2d 403, 404-05 (La. App. 4 Cir.1993); Lerma v. Champion Ins. Co., 597 So.2d 518, 520 (La.App. 1 Cir. 1992). Because each of these claims is a separate cause of action, each may be tried separately from the primary causes of action and each may have bifurcated trials for liability and quantum. La. C.C.P. arts. 1562, 1631, 1632 and 1915; Emergency Physicians Ass'n v. Our Lady of the Lake Regional Med. Cent., 94-1268, p. 1 (La.9/16/94), 642 So.2d 179; Dugas v. Automotive Cas. Ins. Co., 98-0807, pp. 3-4 (La.App. 5 Cir. 2/10/99), 729 So.2d 25, 27-28.

Texas Law on Exemplary (Punitive) Damages
The Texas law providing for exemplary (punitive) damages is found in § 41.001 et seq. of Chapter 41Damages, of Subtitle CJudgments, of Title 2Trial, Judgment, and Appeal, of the Civil Practice and Remedies Code of the V.A.T.S. The operative language for the recovery of exemplary damages is found in § 41.003(a) and (b) which provides, in pertinent part, that "exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from: (1) fraud; (2) malice; or (3) gross negligence." (Emphasis added.) In § 41.009 this law provides that the issues of liability and quantum shall be decided in bifurcated trials.
Pursuant to Louisiana. Civil Code article 3546, punitive damages may be awarded in a Louisiana court.

Texas Law on Awarding Attorneys' Fees
The Texas law providing for an award of attorneys' fees is found in article 21.21 Unfair Competition and Unfair Practices of the V.A.T.S. Insurance Code. The operative language for the recovery of an attorney fee is found in § 3 of article 21.21 entitled "Unfair Methods of Competition or Unfair and Deceptive Acts of Practices Prohibited" which states that "(n)o person shall engage in this state in any trade practice which is defined in this Act, or determined pursuant to this Act to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance." (Emphasis added.) An illustrative list of definitions of what constitutes unfair methods of competition and unfair or deceptive acts or practices is found in § 4 of article 21.21; making any misrepresentation as to the financial condition of any insurer and making or filing false financial statements are proscribed therein.
Article 21.21, § 16 is entitled "Relief Available to Injured Parties". Paragraph (a) thereof provides as follows:

Any person who has sustained actual damages caused by another's engaging in an act or practice declared in Section 4 of this Article to be unfair methods of competition or unfair or deceptive acts or practices in the business of insurance or in any practice specifically enumerated in a subdivision of Section 17.46(b), Business & Commerce Code, as an unlawful deceptive trade practice may maintain an action against the person or persons engaging in such acts or practices. To maintain an action for a deceptive act or practice enumerated in Section 17.46(b), Business & Commerce Code, a person must show that the person has relied on the act or practice *728 to the person's detriment. (Emphasis added.)
Paragraph (b) of § 16 provides, in pertinent part, that "In a suit under this Section, any plaintiff who prevails may obtain: (1) the amount of actual damages plus court costs and reasonable and necessary attorneys' fees. If the trier of fact finds that the defendant knowingly committed the acts complained of, the trier of fact may award not more than three times the amount of actual damages. . . ." (Emphasis added.)

MODIFICATION OF A FINAL JUDGMENT
A judgment that determines the merits of a case in whole or in part is a final judgment. La. C.C.P. art. 1841. A final judgment may be rendered and signed by a court, even though it may not grant all of the relief prayed for, or may not adjudicate all of the issues in the case. La. C.C.P. art. 1915. Thus, the issues of liability on a cause of action and quantum (amount awarded), if there is liability, may be bifurcated and tried separately and the judgment on each issue will be a final judgment. La. C.C.P. art. 1915A(5).

Cosmetic Changes to a Final Judgment
Pursuant to Louisiana Code of Civil Procedure article 1951 a final judgment may be amended by a trial court at any time to (1) alter the phraseology of the judgment, but not its substance, or (2) correct errors of calculation. Such amendments are cosmetic and not substantive. Hebert v. Blue's Auto & Truck Parts, 2000-2154 (La.App. 1 Cir. 12/28/01), 804 So.2d 953, writ denied, XXXX-XXXX (La.3/28/02), 812 So.2d 635. The December judgments did not correct errors of calculation. They did not alter the cosmetic phraseology of the November judgments. As will be hereinafter shown, they substantively reversed the November judgments.

The Punitive Damages Judgments
The specific November punitive damages judgments track the operative language of V.A.T.S. Civil Practice and Remedies Code § 41.003(a) and (b) by stating that the plaintiffs have sustained their burden of proving by clear and convincing evidence that the defendant committed fraud, malice and gross negligence that caused damage to them; this factually establishes liability for punitive damages. This language also substantially tracks the language of the trial court's Interrogatory 9 which asked the Texas HMO jury if Health Net was liable for punitive damages.[3] One of the November judgments specifically states that "this Court finds that defendant Health Net, Inc.'s conduct was sufficiently egregious to warrant an award of punitive damages" and that "the exact amount of the punitive damages award shall be made following a bifurcated trial. . . ." (Emphasis added.) This language is clear and unambiguous.
These November judgments substantively decree the liability of Health Net for punitive damages.
In addition, the December 20, 2005 judgment states that it was granted "in accordance with CCP Art. 1672(B)." Louisiana Code of Civil Procedure article 1672(B) is entitled "Involuntary dismissal" and provides as follows:
In an action tried by the court without a jury, after the plaintiff has completed *729 the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence. (Emphasis added.)
Article 1672(B) provides, in pertinent part, that after a plaintiff rests any party may move for an involuntary dismissal on the ground that the plaintiff "has shown no right to relief." The phrase any party does not include the court because the court is not a party to the action. Succession of Ratcliff v. Fruge, 99-0575, pp. 4-5 (La.App. 3 Cir. 12/8/99), 755 So.2d 918, 922; Koch v. Koch, 97-1600, p. 4 (La.App. 4 Cir. 4/22/98), 714 So.2d 63, 65; Williams v. Brooks, 96-1709, p. 3 (La.App. 3 Cir. 4/30/97), 693 So.2d 302, 304, writ denied, 97-1434 (La.9/19/97), 701 So.2d 175. The record on appeal does not reflect that any party moved for an Article 1672(B) dismissal nor does it reflect that a hearing was held on such a motion. The trial court committed error by granting such a dismissal on its own motion without conducting a hearing.[4]
The December 20, 2005 judgment specifically states that "plaintiffs have shown no right to relief" for punitive damages. This is a substantive reversal of the November 4, 2005 judgments.

The Attorneys' Fees Judgments
The specific November attorneys' fees judgments track the operative language of V.A.T.S. Insurance Code Art. 21.21 by stating that the plaintiffs sustained their burden of proving by a preponderance of the evidence that the defendant knowingly engaged in an unfair or deceptive act or practice that was the proximate cause of damage to them; this factually establishes liability for attorneys' fees. This language also substantially tracks the language of the trial court's Interrogatory 7 which asked the Texas HMO jury if Health Net was liable for attorneys' fees. One of the judgments specifically states, in pertinent part, that "plaintiff is entitled to an award of reasonable attorneys' fees. . . ." This language is clear and unambiguous.
In a bench trial it is unnecessary to have a bifurcated trial on an attorneys' fees issue. Further, presenting evidence of the value of the legal services rendered is not necessary if the services are evident from the record or were rendered under the supervision of the court. Hebert v. State Farm Ins. Co., 588 So.2d 1150, 1153 (La.App. 1 Cir.1991); Francis v. Travelers Ins. Co., 581 So.2d 1036, 1044 (La.App. 1 Cir.1991), writs denied, 588 So.2d 1114, 1121 (La.1991). See generally Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La. 1982), and Rule 1.5 of the Louisiana Rules of Professional Conduct. However, as previously indicated, the trial court entered a pre-trial order that apparently bifurcated the liability and quantum portions of the attorneys' fees issue.
During the November 21-22, 2005 bifurcated trial, the Louisiana and Oklahoma HMOs presented extensive evidence concerning what would be reasonable attorneys' fees. When the December 6 and 12, 2005 judgments were rendered, there was substantial evidence in the record upon which the trial judge could make a quantum award. Thus, it may reasonably be *730 inferred that when the trial judge ruled that the Louisiana and Oklahoma HMOs "failed to meet his [sic] burden to establish the awarding of attorney fees[,]" she was referring to the liability judgment and not a quantum ruling. This is a substantive reversal of the November 4, 2005 judgments.

The Proper Procedure to Substantively Change a Final Judgment
Once the November judgments were rendered, they could be affected substantively in the trial court only by (1) a new trial, La. C.C.P. art.1971 et seq., or (2) an action for nullity, La. C.C.P. art.2001 et seq. Bourgeois v. Kost, 2002-2785, p. 5 (La.5/20/03), 846 So.2d 692, 696; Bonaventure v. Pourciau, 577 So.2d 742, 745 (La. App. 1 Cir.1991).
The record on appeal does not contain (1) pleadings for an action of nullity, (2) a motion and order for a new trial, or (3) a minute entry or transcript showing the trial of such an action or motion. La. C.C.P. arts.1971, 1975-1978. In brief the parties acknowledge that there was no motion or hearing for a new trial.
In Bourgeois, 2002-2785 at p. 5, 846 So.2d at 696, appears the following:

It is well settled under our jurisprudence that a judgment which has been signed cannot be altered, amended, or revised by the judge who rendered the same, except in the manner provided by law. The trial judge cannot on his own motion or on the motion of any party, change a judgment which has been so signed, notwithstanding it was signed in error. Without a specific statutory grant of authority, the trial court is limited to the general authorization for amending final judgments provided in Code of Civil Procedure Article 1951. As stated above, Article 1951 limits the amendment of judgments to the correction of errors in calculation and alteration of phraseology, but does not authorize a trial court to make substantive amendments to final judgments. Courts have uniformly held substantive amendments to judgments made without recourse to the proper procedures, i.e. by way of a timely motion for a new trial or by appeal, to be absolute nullities. (Emphasis added; citations omitted)
Because the November judgments have not been properly altered, amended or revised by a new trial or an action of nullity and because the December judgments substantively reverse the pertinent November judgments, the December judgments are absolute nullities.

REMEDY FOR ABSOLUTE NULLITY
In Bourgeois, 2002-2785 at p. 8, 846 So.2d at 696, the Louisiana Supreme Court vacated the absolutely null judgment and reinstated the original judgment. We do the same.

REMAND
In brief Health Net asserts because the bifurcated trials for punitive damages and attorneys' fees were not completed, it was not given an "opportunity to present its case," and, if the December judgments are reversed, "then the case must be remanded for completion of the bifurcated trial on those issues."
In the interest of judicial economy, we decline to grant this request at this time. The issues of Health Net's liability for punitive damages and attorneys' fees are presently before this court in its appeals. Health Net may assign error in these rulings. If Health Net is successful, there will be no necessity for a remand on these issues. Should Health Net not prevail on one, or both, of these issues, there will be remands for trials to determine the appropriate quantum.

*731 DECREE
For the foregoing reasons, the rule to show cause is granted and the appeals lodged with this Court bearing numbers 2006 CA 1146-1148, 2006 CA 1149-1151, and 2006 CA 1152-1155 are HEREBY DISMISSED; the December 6, 12 and 20, 2005 judgments of the trial court pertaining to the issues of liability for punitive damages and attorneys' fees are vacated and the November 4, 2005 judgments pertaining to Health Net's liability for punitive damages and attorneys' fees are reinstated.
RULES TO SHOW CAUSE GRANTED; APPEALS DISMISSED; JUDGMENTS VACATED; ORIGINAL JUDGMENTS REINSTATED.
NOTES
[1] The Honorable Philip C. Ciaccio, Judge (retired), the Honorable Walter I. Lanier, Jr., Judge (retired), and the Honorable Ian W. Claiborne, Judge (retired), are serving as judges ad hoc by special appointment of the Louisiana Supreme Court.
[2] It appears that bifurcating the liability and quantum issues of a punitive damage cause of action is a well-established procedure in civil jury trials in the United States. Blatt, Hammesfahr and Nugent, Punitive Damages: A State by State Guide to Law and Practice, § 1.2, pp. 7-8, § 3.3, pp. 97-101 and 137 (Ed.2005). It would seem that such a bifurcated civil jury trial is required in Louisiana because the wealth of the defendant is not relevant evidence for that portion of the trial pertaining to the amount of compensatory damages whereas the wealth of the defendant is very relevant in determining the amount of punitive damages. Mosing v. Domas, XXXX-XXXX, pp. 10-12 (La.10/15/02), 830 So.2d 967, 977-79; Rodriguez v. Traylor, 468 So.2d 1186, 1187-88 (La.1985). See, for example, Bienvenu v. Dudley, 95-0547, p. 6 (La.App. 1 Cir. 10/3/96), 682 So.2d 281, 284, writs denied, 96-2661, 96-2673 (La.12/13/96), 692 So.2d 1069, 1070.
[3] As previously indicated, in the Texas HMO trial the jury answered, "Yes" and thereafter a bifurcated trial was held to fix the amount of punitive damages. These November judgments provide for the same procedure.
[4] In its brief to this Court, Health Net asserts "Health Net has not had any opportunity to put on its case and has made no motion for involuntary dismissal." It is doubtful that the Louisiana and Oklahoma HMOs would make such a motion to dismiss their own claims.