MARC E. JOHNSON, Judge.
| ¡.Plaintiffs, Marie Rhodes and Ronald Rhodes, appeal the trial court’s directed verdict in favor of Defendant, Dr. Tristan Schultis, dismissing their medical malpractice claim. For the reasons that follow, we vacate the trial court’s judgment and remand the matter for a new trial.
In December 1994, Dr. Schultis performed a laparoscopic surgery on Ms. Rhodes for the removal of an ovarian cyst. During the surgery, Dr. Schultis removed Ms. Rhodes’ entire right ovary. Thereafter, Ms. Rhodes continued to experience pain. She reported the pain to Dr. Schul-tis over the next several months and was advised the pain would get better; however, the pain continued.
Ms. Rhodes subsequently sought treatment with Dr. Andrew Cook, who per *334 formed a second laparoscopic surgery in December 1995. During this surgery, it was noted that Ms. Rhodes had significant endometriosis. Dr. Cook also observed and removed a foreign object from Ms. Rhodes’ pelvic area. The | ^laparoscopic surgery was ultimately converted to an open procedure. After the surgery, Ms. Rhodes reported that she no longer had any pain, except minor incisional pain.
Ms. Rhodes later instituted a medical review panel. In December 1997, the medial review panel concluded that the foreign object found in Ms. Rhodes was a part of a Penrose drain, which is not used in laparoscopic procedures.[1] As a result, the medical review panel determined that Dr. Schultis did not breach the applicable standard, of care.
Thereafter, in April 1998, Plaintiffs filed the instant lawsuit alleging Dr. Schultis was negligent for leaving the foreign object in Ms. Rhodes during the December 1994 surgery, and that Ms. Rhodes suffered injuries and complications as a result of the foreign object being left in her body. Plaintiffs maintained Dr. Schultis lacked the required knowledge and skill to provide proper care to Ms. Rhodes. They also asserted that Dr. Schultis failed to properly investigate Ms. Rhodes’ continued complaints and discover the cause of her pain, which they claimed was the foreign object. Plaintiffs further pled the doctrine of res ipsa loquitur, claiming that this type of injury does not result in the absence of negligence.
After Plaintiffs stipulated that their damages did not exceed $50,000, a bench trial commenced on April 15, 2013. Plaintiffs presented their case over two days. Immediately after Plaintiffs rested their case, the trial judge rendered judgment sua sponte in favor of Defendant and dismissed Plaintiffs’ claims. A written judgment was signed on April 16, 2013. It is from this judgment that Plaintiffs appeal.
|4On appeal, Plaintiffs contend the trial court erred in granting a “directed verdict” after they rested their case.[2] Plaintiffs maintain the trial court committed several errors including: denying them the right to trial under the Medical Malpractice Act; preventing their expert from testifying about the applicable standard of care because of an erroneous ruling by the medical review panel; limiting Plaintiffs to the theory of res ipsa loquitur and then requiring additional proof regarding the chain of custody of the foreign body; and failing to require Defendant to rebut the presumption of negligence after Plaintiffs established a prima facie case of liability under the theory of res ipsa loquitur.
We first note a procedural irregularity in the rendition of the trial court’s judgment. After Plaintiffs presented their testimony and the testimony of their witnesses, Dr. Schultis and Dr. Robert Eden, they rested subject to the introduction of Plaintiffs Exhibit No. 4-A, the foreign body removed from Ms. Rhodes. The trial court found Exhibit 4-A inadmissible, and then rendered judgment sua sponte. • The record shows that one defense witness, Dr. *335 Joseph Uddo, was taken out of turn at the request of Defendant during the presentation of Plaintiffs case; however, nothing in the record indicates Defendant rested or had completed presenting his evidence pri- or to the trial court rendering judgment.
The normal order of trial is: (1) opening statements by the plaintiff and then the defendant; (2) the presentation of the plaintiffs evidence and then the defendant’s evidence; (3) the presentation of the plaintiffs rebuttal evidence; and (4) the argument of the plaintiff and then the defendant, and then plaintiffs rebuttal argument. La. C.C.P. art. 1632. After the trial is complete, the court may Neither immediately render judgment or take the case under advisement. La. C.C.P. art. 1637.
Under La. C.C.P. art. 1672, judgment may be rendered prior to the completion of trial upon motion of any party for an involuntary dismissal. Subsection B provides:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
A judgment of involuntary dismissal under La. C.C. art. 1672(B) must be on motion of either party: a trial court may not dismiss an action on its own motion because it is not a party to the action. Dahan Novelties & Co., LLC v. Ohio Casualty Ins. Co., 10-626 (La.App. 4 Cir. 10/20/10); 51 So.3d 129, 135-36; Wooley v. AmCare Health Plans of Louisiana, Inc., 06-1146 (La.App. 1 Cir. 1/17/07); 952 So.2d 720, 729. The record on appeal in this matter does not reflect that any party moved for an involuntary dismissal under Article 1672(B). Thus, the trial court’s rendition of judgment sua sponte after Plaintiffs rested was improper.[3]
Further, we And the trial court erred in not allowing Plaintiffs to proceed to trial in medical malpractice on the basis their malpractice claim had not been properly presented to a medical review panel.
| fiAfter calling Dr. Schultis as their first witness, Plaintiffs called Dr. Robert Eden and offered him as an expert in obstetrics and gynecology, particularly, gynecological laparoscopic procedures. Plaintiffs explained that Dr. Eden would be giving expert testimony about the standard of care regarding the use of the endo catch, *336 or retrieval bag, during a laparoscopic procedure. Defendant objected to Dr. Eden providing expert testimony regarding the standard of care for the use of an endo bag on the basis he lacked training and experience as required by La. R.S. 9:2794.[4]
The trial court noted that the only two issues the medical review panel considered were (1) the failure of Dr. Schultis to remove Ms. Rhodes’ entire ovary and (2) the foreign object left in Ms. Rhodes. The trial court clarified that Plaintiffs no longer had an issue with the removal of Ms. Rhodes’ ovary, and that the only issue in the current lawsuit pertained to the foreign object left in Ms. Rhodes. The trial court then noted that the medical review panel reviewed a videotape of the surgery and concluded that the foreign body found in Ms. Rhodes’ abdomen was a Penrose drain, and that it could not have been left in Ms. Rhodes during Dr. Schultis’ surgery because this type of drain is not used in a laparoscopic procedure.
The trial court ultimately concluded that because Dr. Eden was not giving an expert opinion about a Penrose drain, he could not testify as an expert on the standard of care regarding an endo bag because the issue of an endo bag being left |7behind during surgery was never presented to the medical review panel. The trial court stated, “I don’t know what business I have then to go behind the expert panel’s opinion and amend and/or otherwise enlarge it in an attempt to interpret what they really mean, even though they said something about a totally different device.” The trial court explained that it was disallowing Dr. Eden from offering expert testimony because his testimony related to an issue outside the medical review panel’s opinion. It never made a determination of Dr. Eden’s qualifications under La. R.S. 9:2794. We find this was legal error.
The Louisiana Medical Malpractice Act requires that all medical malpractice claims against qualified health care providers are to be submitted to a medical review panel prior to filing suit in any court. La. R.S. 40:1299.47; McGlothlin v. Christus St. Patrick Hospital, 10-2775 (La.7/1/11); 65 So.3d 1218, 1225. The purpose of pre-trial screening through a medical review panel is to weed out frivolous claims without the delay or expense of a court trial. Id., citing Everett v. Goldman, 359 So.2d 1256, 1264 (La.1978). The sole duty of the medical review panel is “to express its expert opinion as to whether or not the evidence supports the conclusion that the defendant or defendants acted or failed to act within the appropriate stan *337 dards of care.” La. R.S. 40:1299.47(G); McGlothlin, 65 So.3d at 1226.
Any report of the medical review panel “shall be admissible as evidence in any action subsequently brought by the claimant in a court of law.” La. R.S. 40:1299.47(H). However, such expert opinion “shall not be conclusive and either party shall have the right to call, at his cost, any member of the medical review panel as a witness.” Id. The opinion of the medical review panel is equivalent to expert medical evidence. McGlothlin, 65 So.3d at 1226-27. As such, it is subject to review and can be contested by an opposing viewpoint. Id. at 1227. The trial Iscourt should evaluate the opinion of the medical review panel by the same rules which are applicable to other expert witnesses. Specifically, the trial court is not bound by the opinion and, as the trier of fact, is free to accept or reject any portion or all of the opinion. McGlothlin, supra. Thus, the trial court erred in concluding that it was bound by the opinion of the medical review panel.
Additionally, the trial court erred when it ruled that Dr. Eden could not offer expert opinion regarding the standard of care in the use of an endo catch simply on the basis the medical review panel erroneously concluded the foreign object left inside Ms. Rhodes was a Penrose drain. The trial court reasoned that because the medical review panel did not consider malpractice on the basis the foreign object was a remnant of an endo catch, Plaintiffs could not proceed in malpractice on that basis.
A request for review of a malpractice claim or a malpractice complaint shall contain a brief description of the alleged malpractice so as to afford the defendant proper notice of the alleged acts of malpractice. Gele v. Binder, 05-121 (La.App. 5 Cir. 5/31/05); 904 So.2d 836, 838. The record before us does not contain Plaintiffs’ initiating complaint to the medical review panel. However, in the panel’s opinion, which is a part of the record, the panel states that “[t]he plaintiffs argued that Dr. Schultis left a large plastic object in the patient’s abdomen, which was discovered in December, 1995.” The panel further indicates that it reviewed a videotape of the surgery, which depicted a foreign body found in the pelvis. The panel concluded, in its expert opinion, that the foreign body appeared to be a folded Pen-rose drain. As discussed above, the opinion of the panel is not binding and nothing in the Medical Malpractice Act prevents Plaintiffs from presenting evidence, including expert medical testimony, at trial that contradicts the panel’s opinion.
| ¡furthermore, the alleged act of malpractice was the leaving of a plastic object in Ms. Rhodes’ abdomen. This alleged act of malpractice was clearly presented to the medical review panel. Hence, to the extent the trial court found the medical review panel failed to consider the issue Plaintiffs sought to present at trial, it erred.
We find the fact the trial court rendered judgment at the close of Plaintiffs’ case, without any motion by Defendant or any indication Defendant had rested, and its ruling regarding the expert testimony of Dr. Eden on the applicable standard of care to be legal errors. Legal errors are those errors that occur when a trial court applies incorrect principles of law and such errors are prejudicial. Legal errors are prejudicial “when they materially affect the outcome and deprive a party of substantial rights.” Evans v. Lungrin, 97-541 (La.2/6/98); 708 So.2d 731, 735. When a prejudicial error of law skews the trial court’s factual findings and causes it to pretermit other issues, the appellate *338 court is required, if possible, to render judgment on the record by conducting a de novo review. Id. However, the supreme court has recognized that de novo review is not the best course of action in every case. Wegener v. Lafayette Ins. Co., 10-810 (La.3/15/11); 60 So.3d 1220, 1233.
In this case, we find the record is incomplete, and we cannot conduct a de novo review of the issues. Specifically, the trial court’s rulings effectively prevented Plaintiffs from presenting evidence regarding the applicable standard of care and whether Defendant breached that standard of care; in other words, Plaintiffs were not allowed to present the crux of their medical malpractice claim. After its ruling regarding the testimony of Dr. Eden, the trial court repeatedly noted throughout the case that the issue was not whether Dr. Eden breached the standard of care, but rather the issue was the application of res ipsa loquitur. Accordingly, [inwe find that under the circumstances of this case and the particular legal errors involved, a remand of the case for a new trial is required.

DECREE

For the foregoing reasons, we vacate the trial court’s April 16, 2013 judgment in favor of Dr. Schultis, dismissing Plaintiffs’ claims, and remand the matter for a new trial. Defendant/Appellee, Dr. Schultis, is to bear the costs for this appeal.

JUDGMENT VACATED; REMANDED FOR NEW TRIAL.

. It was subsequently determined that the foreign object left inside Ms. Rhodes was not a Penrose drain but rather was part of an "endo bag” or "endo catch,” which is a lapa-roscopic specimen retrieval bag.

. We note that a directed verdict is only appropriate in a jury trial. Because this case was tried by a judge, the proper terminology is involuntary dismissal. Both a directed verdict and an involuntary dismissal have the same legal effect; namely, the plaintiff's action is being dismissed upon his failure to show a right to relief upon the presentation of the facts and the law. Clark v. Hitt, 463 So.2d 39, 42 (La.App. 5th Cir.1985), writ denied, 464 So.2d 1381 (La.1985).

. Additionally, we note that even if Defendant, as a party, had made a motion for involuntary dismissal at the close of Plaintiffs' case, it would have been premature. A motion for involuntary dismissal may be made at the close of the plaintiff's case or at the close of all the evidence. It may not be made at points in between. Melady v. Wendy’s of New Orleans, Inc., 95-913 (La.App. 5 Cir. 4/16/96); 673 So.2d 1094, 1097, abrogated on other grounds by Porteous v. St. Ann’s Café & Deli, 97-837 (La.5/29/98); 713 So.2d 454; Gagliano v. Amax Metals Recovery, Inc., 96-1751 (La.App. 4 Cir. 5/7/97); 693 So.2d 889, 890, writ denied, 97-1738 (La. 10/13/97); 703 So.2d 619. When the defense is allowed to put on a witness out of turn, before the plaintiff has completed presenting his case, a motion for involuntary dismissal can only be entertained at the close of all the evidence. Melady, supra. Here, Defendant put on the testimony of Dr. Uddo during Plaintiffs’ case-in-chief. Thus, a motion for involuntary dismissal could have only been entertained at the close of all the evidence, and there was no indication Defendant had completed presenting his case with the sole testimony of Dr. Uddo.

. La. R.S. 9:2794 provides in pertinent part:
D. (1) In a medical malpractice action against a physician ... for injury to or death of a patient, a person may qualify as an expert witness on the issue of whether the physician departed from accepted standards of medical care only if the person is a physician who meets all of the following criteria:
[[Image here]]
(c) He is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of care.
[[Image here]]
(3) In determining whether a witness is qualified on the basis of training or experience, the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness is board certified or has other substantial training or experience in an area of medical practice relevant to the claim and is actively practicing in that area.